UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PCL Construction Services, Inc.,<br><br>    Plaintiff,<br><br>    v.<br><br>JP Morgan Chase Bank, N.A.,<br><br>    Defendant. | Case No. _____<br><br>COMPLAINT |

PCL Construction Services, Inc, by undersigned counsel of record, as and for its Complaint against Defendant JP Morgan Chase Bank, N.A. states as follows:

**Summary of Claims**

1.      This is an action to recover in excess of $30 million owed to Plaintiff PCL Construction Services, Inc. ("PCL" or "Contractor") for work it duly invoiced, without objection, in connection with the construction of the American Dream retail and entertainment complex in the Meadowlands Sports Complex in East Rutherford, New Jersey.

2.      PCL is a construction company that was hired to act as the construction manager for the multi-billion dollar American Dream project by Ameream LLC ("Ameream"), its developer. Ameream funded the development of this project in substantial part through a loan agreement (the "Construction Loan"). Deutsche Bank Securities, Inc. and JP Morgan Chase Bank, N.A. ("JPMC") were joint lead arrangers and book running managers for the Construction Loan. JPMC was the Administrative Agent (the "Agent") for the Construction Loan.

3.      In connection with the Construction Loan, JPMC, as Agent, entered into a General Contractor Consent and Agreement (the "Consent Agreement") that ensured PCL would be entitled to demand from Agent, and Agent and the lenders that are party to the Construction

1

Loan (the "Lenders") would be obligated to pay, all amounts owing to PCL for work completed under PCL's construction contract with Ameream in the event that Ameream itself failed to timely pay such obligations.

4.  Ameream is now in financial distress. It failed to timely pay more than $24 million due to PCL for invoices covering the period from July 2020 to August 2021. For each of these invoices, PCL properly issued timely Notices of Default of Payment to Ameream and Agent as required by the governing contractual documents. In turn, Agent now has a contractual obligation to advance the amounts due and owing that Ameream failed to pay as they became due. Yet, Agent has failed to do so.

5.  Agent's failure to make such payments is a clear breach of the Consent Agreement. PCL brings this action to enforce its rights and remedy this breach.

## The Parties

6.  Plaintiff PCL Construction Services, Inc. is a Colorado corporation headquartered in Denver, Colorado.

7.  Defendant JP Morgan Chase Bank, N.A. is a national banking association headquartered in New York, New York.

## Jurisdiction and Venue

8.  This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that the matter in controversy exceeds the value of $75,000 and is between citizens of different states.

9.  Personal jurisdiction and venue is proper based on Defendant's consent under Section 8 of the Consent Agreement which provides:

> Agent and Contractor, each, for itself and its successors and assigns, hereby irrevocably (i) submits to the nonexeclusive jurisdiction of the state and federal courts in New York; and (ii) waives, to the fullest extent permitted by law, any

objection that it may now or in the future may have to the laying of venue of any litigation arising out of or in connection with this Consent or the Construction Contract brought in the New York County, New York, or in the United States District Court for the Southern District of New York.

## Background

<u>The Consent Agreement</u>

10. PCL and Metro Central, LLC, an affiliate of Ameream, are parties to a Standard Form of Agreement Between Owner and Construction Manager as Contractor, dated as of June 18, 2014, which was subject to amendments dated as of August 1, 2014, December 18, 2014, November 2, 2016, and May 2, 2017 (collectively, the "Construction Contract"). The Construction Contract was later assigned by Metro Central, LLC to Ameream.

11. The Construction Contract generally sets the terms and conditions pursuant to which PCL would manage the construction of the American Dream project. As set forth below, it also includes specific procedures and mechanisms for PCL to invoice and get paid on a timely basis for the work performed under the Construction Contract.

12. Parallel to the Construction Contract, PCL, Ameream, and Agent entered into the Consent Agreement.

13. In the Consent Agreement, PCL acknowledged and consented to the collateral assignment of the Construction Contract to Agent as further security for Ameream's obligations to the Lenders under the Construction Loan. At the same time, Agent agreed that if Ameream failed to timely meet its payment obligations to PCL under the Construction Contract, it would advance the amounts due.

14. Specifically, Section 5 of the Consent Agreement, "Advances to Contractor", provides that in the event of a default by Ameram:

> "Contractor shall be entitled to demand from the Agent (and the Agent and Lenders shall have the obligation to pay to Contractor) all amounts then owing to

3

Contractor for work completed under the Construction Contract to the date of the notice of Payment of Default (all such amounts which are not in dispute, collectively, the "**Completed Work Amount**")."

15. Agent's obligation to make this advance is subject to (i) PCL "providing notice of Payment Default" to Agent at the same time any such notice is given to Ameream, as required in Section 3 of the Consent Agreement, (ii) PCL satisfying the conditions for payment set out in the Construction Contract, and (iii) delivering such other documentation as the Agent shall reasonably request (and as is customary in the industry to support the amounts owing). The Consent Agreement also provides that "the amount of the Completed Work Amount (and the Agent's and Lender's obligation to make such payment) shall not exceed an amount equal to the unpaid completed work amount incurred within the sixty (60) day period immediately prior to the date of the Payment Default Notice."

16. Finally, Section 5 of the Consent Agreement provides that "All amounts paid by the Agent to Contractor pursuant to" these provisions "shall be deemed to be Advances made by the Agent, on behalf of the Lenders, to the Borrower under the Loan Agreement." In other words, while, on the one hand, Agent and Lender had the obligation to advance amounts due to PCL for unpaid invoices, on the other hand, they had the power to seek recovery from Ameream for every dollar advanced to PCL.

Ameream's Default

17. Section 7.1.2.1 of the Construction Contract requires that PCL submit a "pencil copy" of its proposed monthly Application for Payment (together with all required supporting documentation) "no later than the 25th day of each month for which such Application of Payment shall be submitted." The Construction Agreement further states that "the intent of the 'pencil copy' review is to endeavor to identify any disputed amounts." Under this provision, the

parties further agreed "that any such disputed amounts as identified" in the pencil copy review "will be removed from the Application for Payment submitted by Construction Manager." Finally, Section 7.1.2.1 provides that the invoice date of any Application for Payment shall be the date of the properly submitted Application for Payment following the "pencil copy" review, and Ameream "acknowledges that it is required to make payment to the extent of the amount approved."

18. Under these provisions, PCL submitted a pencil copy of the July 2020 application for payment to Ameream on July 24, 2020. Ameream never requested a pencil copy review or otherwise identified any disputed amounts in PCL's July Application for Payment. Accordingly, PCL's July 2020 Application for Payment to Ameream was submitted for payment on July 31, 2020, and payment was due on September 1, 2020.

19. Ameram did not pay. PCL sent a Payment Default Notice, dated September 4, 2020, notifying Agent that Ameream was in default for failing to make payment for completed work performed in June 2020 and July 2020. Eventually, Ameream paid the June 2020 invoice. But Ameream never paid PCL the July invoice, which was $16,111,030.12. The entirety of the unpaid amount for July 2020 represents the unpaid completed work amount incurred within the sixty-day period immediately prior to the date of the September 4, 2020 Payment Default Notice for this work.

20. PCL followed similar procedures with respect to Applications for Payment to Ameream covering August 2020, September 2020, October 2020, November 2020, January 2021, February 2021, June 2021, and August 2021. In each case, PCL followed the appropriate protocols to submit its invoice to Ameream, Ameream failed to timely pay the invoice without

justification, and PCL thereafter sent a Payment Default Notice to Agent under the terms of the Consent Agreement.

21. The following table summarizes Ameream's payment defaults:

| Month | Amount | Accrued Interest[1] | Invoice Date | Invoice Due Date | Notice of Default Date |
|---|---|---|---|---|---|
| July 2020 | $16,111,030.12 | $4,911,105.45 | 7/31/2020 | 9/1/2020 | 9/4/2020 |
| Aug. 2020 | $ 2,010,877.54 | $575,785.86 | 8/31/2020 | 10/1/2020 | 11/3/2020 |
| Sept. 2020 | $2,002,864.26 | $573,491.37 | 9/30/2020 | 11/1/2020 | 11/3/2020 |
| Oct. 2020 | $1,601,985.31 | $444,386.34 | 10/30/2020 | 12/1/2020 | 12/2/2020 |
| Nov. 2020 | $930,389.99 | $246,330.31 | 11/30/2020 | 1/1/2021 | 1/12/2021 |
| Dec. 2020 | $1,072,685.71 | $271,771.54 | 12/29/2020 | 2/1/2021 | 2/18/2021 |
| Jan. 2021 | $201,578.83 | $50,387.80 | 1/29/2021 | 2/28/2021 | 3/1/2021 |
| Feb. 2021 | $271,130.00 | $65,182.62 | 2/28/2021 | 3/30/2021 | 4/1/2021 |
| June 2021 | $47,967.54 | $9,713.43 | 6/30/2021 | 7/30/2021 | 8/2/2021 |
| Aug. 2021 | $64,305.00 | $11,773.10 | 8/31/2021 | 9/30/2021 | 10/4/2021 |
| TOTAL: | $24,314,814.30 | $7,159,927.82 | | | |

The Agent's Failure to Pay

22. Each time that PCL provided Agent with Notice of Ameream's payment defaults, PCL invoked its right to demand from Agent (and have Agent's and Lenders' pay), all amounts owing to PCL. At the same time, PCL sought to engage with Agent regarding its intentions with respect to remedying Ameream's defaults.

---

[1] Interest calculated pursuant to § 4.2.2 of the Construction Contract as of May 31, 2023.

23. PCL's efforts to engage in constructive discussions with Agent failed.

24. In August 2022, PCL again demanded that Agent fulfill its obligations under Section 5 of the Consent Agreement by paying PCL the full amount owing, including accrued interest, for work completed under the Construction Contract as set forth in the prior Payment Default Notices. Payment, however, has still not been forthcoming. Indeed, rather than work towards a constructive resolution, Ameream has retroactively tried to manufacture claims of purported defective constructive work by PCL that are meritless, untimely, and, even in aggregate and assuming their *bona fides*, worth far less than the $24 million that was properly invoiced by PCL but is unpaid. For its part, Agent has continued to refuse to pay PCL the amounts due under the Consent Agreement, including by invoking Ameream's pretextual, *post hoc* claims of construction defects, notwithstanding Agent's clear contractual obligation to pay PCL "all amounts then owing" as of the date of the relevant Payment Default Notices.

## Causes of Action

### Count One -- Breach of Contract

25. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth here.

26. The Consent Agreement is an enforceable contract between PCL and Agent.

27. PCL has fully performed its contractual obligations under the Consent Agreement, and any conditions precedent have been satisfied.

28. Section 5 of the Consent Agreement provides, among other things, that Agent is obligated to pay "all amounts then owing to Contractor for work completed under the Construction Contract to the date of the notice of Payment of Default."

29. As alleged above, Agent has breached the Consent Agreement by failing to timely pay amounts owing to PCL as of the date of Payment Default Notices for July 2020, August

2020, September 2020, October 2020, November 2020, December 2020, January 2021, February 2021, June 2021, and August 2021.

30. As a direct and proximate result of Agent's breaches, PCL has suffered damages in excess of $30 million.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order:

(a) awarding damages in favor of Plaintiff in an amount to be proven at trial;

(b) together with such other and further relief as the Court may deem just and proper.

Dated: New York, New York
June 15, 2023

BOIES SCHILLER FLEXNER LLP

By: _____
Eric J. Brenner (ebrenner@bsfllp.com)
55 Hudson Yards
New York, NY 10001
(212) 446-2300 (Phone)
(212) 446-2350 (Fax)

*Attorneys for Plaintiff*